IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JUDY MORRELL, et al., | : | |
| Plaintiffs, | : | |
| vs. | : | CIVIL ACTION 09-00753-KD-C |
| THOMAS DAVID LUNCEFORD, et al., | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

Plaintiffs, proceeding *pro se* and *in forma pauperis*, filed a complaint under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, as well as 18 U.S.C. §§ 81, 918. Because Plaintiffs are proceeding *in forma pauperis* under 28 U.S.C. § 1915, the Court may dismiss their action at any time if it finds the complaint is deficient for one of the reasons enumerated in § 1915(e)(2)(B). See Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002) (applying § 1915(e) to non-prisoner actions). Inasmuch as Plaintiffs' motion to proceed without prepayment of fees was referred to undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(1),[1] it is recommended that this action be dismissed without prejudice pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

I. Nature of Proceedings.

On November 16, 2009, Plaintiffs filed a complaint in this Court against Thomas David Lunceford ("Lunceford") and Judith S. Kelly ("Kelly"), alleging diversity jurisdiction under 28

---

[1] Local Rule 72.2(c)(1) provides for the automatic referral of non-dispositive pretrial matters to a Magistrate Judge.

1

U.S.C. § 1332.[2]  (Doc. 1).  Plaintiffs allege claims against Defendants Lunceford and Kelly for "Tort[i]ous Interference" in violation of "28 U.S.C. § 1961," "Fraud and Misrepresentation Pursuant to 18 U.S.C.," and "Arson and Attempted Murder Pursuant to 18 U.S.C. Sections 81 and 918."  (Doc. 1 at 13, 17, 24).  Plaintiffs seek $1,000,000 in compensatory damages, as well as punitive damages.  (Id. at 27).  On December 21, 2009, and August 19, 2010, Defendants filed answers to Plaintiffs' complaint denying Plaintiffs' allegations and asserting that the complaint fails to state a claim upon which relief could be granted.  (Docs. 10, 21).

II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiffs are proceeding *in forma pauperis*, the Court is reviewing the complaint under 28 U.S.C. § 1915(e)(2)(B).[3]  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  A claim is frivolous as a matter of law where, inter alia, the defendants are immune from suit, id. at 327, the claim seeks to enforce a right that clearly does not exist, id., or there is an affirmative defense which would defeat the claim, such as the statute of limitations, res judicata, collateral estoppel, or absolute immunity.  Clark v. Georgia Pardons & Paroles Bd., 915 F.2d 636, 640 n.2 (11th Cir. 1990).

---

[2] Although Plaintiffs have pled diversity jurisdiction under 28 U.S.C. § 1332, they have alleged only federal law claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*  Therefore, the proper basis for invoking the Court's jurisdiction is 28 U.S.C. § 1331.

[3] The frivolity and the failure-to-state-a-claim analysis contained in Neitzke v. Williams, 490 U.S. 319 (1989), was unaltered when Congress enacted 28 U.S.C. § 1915(e)(2)(B) in 1996.  See Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001).  However, dismissal is now mandatory under § 1915(e)(2)(B).  Id. at 1348-49.

2

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. See Mitchell v. Farcass, 112 F.3d 1483, 1491 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557 (second brackets in original) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at ----, 129 S. Ct. at 1949. It is only those well-pleaded factual allegations that a court will consider as true. Id. at ----, 129 S. Ct. at 1950. However, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. Jones v. Bock, 549 U.S. 199, 215 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. See Haines v. Kerner, 404 U.S. 519, 520 (1972). However, a court, does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action." GJR Invs. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds*, Iqbal, 556 U.S. ---, 129 S. Ct. 1937 (2009). Furthermore, a pro se litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

III.  Discussion.

In their complaint, Plaintiffs assert three federal law claims against Defendants Lunceford and Kelly arising out of Plaintiffs' lease of a restaurant property located in Gulf Shores, Alabama, from Defendants.  (Doc. 1 at 4-26).  Plaintiffs allege, generally, that Defendants sought to defraud them with respect to the terms and conditions of the lease and then attempted to intimidate them into abandoning the lease agreement by setting fire to the restaurant building while Plaintiff Morrell and her husband were asleep inside.  (Id.).  For each of the reasons set forth below, Plaintiffs' allegations fail to state a claim upon which relief can be granted.

    A.  Counts One and Two: Claims Asserted Under "28 U.S.C. Section 1961" and "18 U.S.C."

In Count One of the complaint, Plaintiffs seek to impose liability on Defendants pursuant to "28 U.S.C. § 1961" for fraud and deceit related to the lease of the restaurant property, conversion of Plaintiffs' funds to their own use, and "intentionally and improperly interfer[ing]" with Plaintiffs' restaurant business, "causing financial harm" and "destroying Plaintiff's business and lives."  (Doc. 1 at 13-17).  In Count Two of the complaint, Plaintiffs similarly seek to impose liability on Defendants pursuant to "18 U.S.C." for deceiving and defrauding Plaintiffs with respect to the profitability of the restaurant and the condition of the building and equipment, converting Plaintiffs' funds to their own use, interfering with Plaintiffs' business, and burning down the building while Plaintiff Morrell and her husband were asleep inside.  (Doc. 1 at 17-24).

Because Plaintiffs are proceeding *pro se* and because the statute cited by Plaintiffs, *28 U.S.C. § 1961*, governs the award of post-judgment interest in federal court litigation, the Court interprets Plaintiffs' allegations in Counts One and Two as intending to assert claims under *18*

4

U.S.C. § 1961,[4] *et seq*., the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Under the law of this Circuit, civil RICO claims must be pled with greater specificity than a typical civil claim, and they must satisfy the requirements of Federal Rule of Civil Procedure 9(b).[5] See Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316-17 (11th Cir. 2007). Therefore, "RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." Id.

As discussed above, Plaintiffs allege that Defendants "concocted a malicious and fraudulent scheme" to convert Plaintiffs' funds to their own use by coercing Plaintiffs into leasing a restaurant property from Defendants based on lies concerning the profitability and condition of the property. After Plaintiffs entered into the lease agreement, Defendants interfered with Plaintiffs' business in an effort to intimidate Plaintiffs into abandoning their lease on the property. The intimidation tactics culminated in Defendant Lunceford setting fire to the restaurant building while Plaintiff Morrell and her husband were asleep upstairs, resulting in "financial ruin and possible loss of their lives." (Doc. 1 at 13-24). Plaintiffs allege that Defendant Lunceford pled guilty to arson in connection with the fire at the restaurant and is now incarcerated. (Id. at 13). Defendant Kelly was a witness for the prosecution against Lunceford and was not charged. (Id.).

---

[4] 18 U.S.C. § 1961 is the definitional section of RICO.

[5] Rule 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally.

"The Racketeer Influenced and Corrupt Organizations Act (RICO or Act), 18 U.S.C. §§ 1961–1968, provides a private right of action for treble damages to '[a]ny person injured in his business or property by reason of a violation' of the Act's criminal prohibitions." Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 641 (2008) (quoting § 1964(c)). Specifically, § 1964 provides, in part:

> (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

18 U.S.C. § 1964(c).

"Section 1962 contains RICO's criminal prohibitions." Bridge, 553 U.S. at 647. At issue here is § 1962(c), which makes it "'unlawful for any person employed by or associated with' an enterprise engaged in or affecting interstate or foreign commerce 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" Id. (quoting 18 U.S.C. § 1962(c)). "The term 'racketeering activity' is defined to include a host of so-called predicate acts, including "any act or threat involving . . . arson, . . . which is chargeable under State law and punishable by imprisonment for more than one year. . . ."[6] 18 U.S.C. § 1961(1)(A).

---

[6] "RICO takes aim at 'racketeering activity,' which it defines as any act 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under federal law." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 481-82 (1985). In that regard, 18 U.S.C. § 1961 specifically provides:

> As used in this chapter--
>
> (1) "racketeering activity" means (A) any act or

6

threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891-894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461-1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581-1592 (relating to peonage, slavery, and trafficking in persons)., [FN1] section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified

7

unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341-2346 (relating to trafficking in contraband cigarettes), sections 2421-24 (relating to white slave traffic), sections 175-178 (relating to biological weapons), sections 229-229F (relating to chemical weapons), section 831 (relating to nuclear materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B). . . .

(Footnote and punctuation in original).

To state a claim for a violation of § 1962(c), a plaintiff must show: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). A plaintiff's proof must establish:

> (1) the existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendants were employed by or associated with the enterprise; (4) that the defendants participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and (5) that the defendants participated through a pattern of racketeering activity.

United States v. Starrett, 55 F.3d 1525, 1541 (11th Cir. 1995) (footnote and citations omitted). A review of the complaint in this action indicates that Plaintiffs' allegations do not state a claim for relief under RICO.

1. Lack of a Pattern of Racketeering Activity.

First, to satisfy the element requiring "a pattern of racketeering activity," "at least two acts of racketeering activity [must be shown], one of which occurred after [October 15, 1970] and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." Starrett, 55 F.3d at 1541 (quoting 18 U.S.C. § 1961(5)). As discussed above, the acts that are prohibited by RICO are found in 28 U.S.C. § 1961(1).

"To successfully allege a pattern of racketeering activity, [a] plaintiff[] must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1264 (11th Cir. 2004) (emphasis in original) (citing H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239-43 (1989) and 18 U.S.C. § 1961(5)). A pattern is shown by criminal conduct that "embraces criminal acts having the same or similar purposes, results, participants, victims, or methods of

9

commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 1265 (quoting Sedima, 473 U.S. at 497 n.14).

In the case at hand, the only acts alleged by Plaintiffs that could arguably qualify as predicate acts under § 1961 are the acts of arson and attempted murder. See 18 U.S.C. § 1961; U.S. v. Sandoval, 375 Fed. Appx. 985, 987 (11th Cir. 2010) (unpublished)[7] ("[W]e have recognized that attempted murder is a predicate activity for RICO purposes."). However, "RICO targets *ongoing* criminal activity, rather than sporadic, isolated criminal acts." Jackson, 372 F.3d at 1264 (emphasis in original). "The continuity element of a pattern of racketeering activity is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address-one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future." Id. at 1265.

In the case at hand, Plaintiffs allege that Defendant Lunceford set fire to the restaurant building in which they were sleeping in order to force them to abandon the lease agreement. This singular event does not constitute a "pattern" of *ongoing* racketeering activity. Accordingly, Counts One and Two fail to state a claim upon which relief could be granted.

2. Lack of an Enterprise Affecting Interstate Commerce.

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

---

[7] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865 n.5 (11th Cir. 2007) (unpublished).

racketeering activity or collection of unlawful debt." Id. Plaintiffs' allegations in Counts One and Two also fail to state a claim under § 1962(c) because they do not allege the existence of an "enterprise," nor do they allege that the "enterprise" was engaged in interstate commerce or engaged in activities which affected interstate commerce. Id.

An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. . . ." 18 U.S.C. § 1961(4). The existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981) (An enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct."). "[T]he definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation." United States v. Goldin Indus., Inc., 219 F.3d 1271, 1275 (11th Cir. 2000). "[L]iability 'depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs.'" Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001) (emphasis in original) (quoting Reves v. Ernst & Young, 507 U.S. 170, 185 (1993)).

In the present case, Plaintiffs' allegations do not show that Defendant Lunceford or Defendant Kelly were part of an ongoing organization or "enterprise" that served as "a vehicle for the commission of two or more predicate crimes." Turkette, 452 U.S. at 583; Goldin, 219 F.3d at 1275. Furthermore, Plaintiffs' allegations do not show that Defendant Lunceford or Defendant

11

Kelly "conducted or participated in the conduct of the "*enterprise's* affairs," as opposed to "their *own* affairs.'" King, 533 U.S. at 163 (emphasis in original).

According to Plaintiffs, Defendants were indebted to the bank on the subject property; they were behind on their mortgage payments to the bank; and they were under the threat of foreclosure. (Doc. 1 at 7, 15). Motivated by "greed," Defendants coerced Plaintiffs into leasing the restaurant building and converted Plaintiffs' funds to their "*own*" personal use. (Id. at 15). After Plaintiffs began leasing the property, Defendants secured a buyer for the property but "could not complete their anticipated sale of the property unless Plaintiffs voluntarily left or were removed from the building." (Id. at 16). When Plaintiffs "made it clear that they were not going to voluntarily void the lease," Defendant Lunceford set fire to the building in order to force the Plaintiffs to leave. (Id.). These allegations, if true, show that Defendants conducted themselves unlawfully for a very specific, *personal* reason: they wanted Plaintiffs' money to cover their *own* delinquent financial obligations, and they wanted to avoid the consequences of their unlawful conduct.

In addition to failing to allege facts which would show that Defendants were conducting the affairs of the "enterprise," Plaintiffs' allegations do not show that the alleged "enterprise" was engaged in or affected interstate commerce. To the contrary, Plaintiffs state in their complaint that, "[a]ll allegations of wrongdoing by Defendants" occurred in "Baldwin [County], State of Alabama." (Doc. 1 at 3).

Plaintiffs' allegations in this case show, at most, two predicate acts—arson and attempted murder—both committed by Defendant Lunceford[8] in Gulf Shores, Alabama, for the sole purpose

---

[8] Under § 1962(c), "one is not liable . . . unless one has participated in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 183 (1993). With respect to Defendant Kelly, Plaintiffs allege that they met her two times -- once before Plaintiffs leased the restaurant property and once at the restaurant when Defendants agreed to

12

of furthering his own personal financial affairs. (Doc. 1 at 4-13). Therefore, for each of the reasons set forth above, Plaintiffs' allegations contained in Counts One and Two of the complaint fail to state a claim upon which relief could be granted.

B. Count Three: Claims Asserted Under "18 U.S.C. Sections 81 and 918."

In Count Three of the complaint, Plaintiffs seek to impose liability on Defendants Lunceford and Kelly pursuant to "18 U.S.C. Sections 81 and 918" for purposefully and intentionally setting fire to the restaurant building, with knowledge that Plaintiff Morrell and her husband were sleeping inside, with the intent to force Plaintiffs to give up their lease interest in the property and with the intent to murder Plaintiff Morrell and her husband.[9] (Doc. 1 at 24-25). Because "18 U.S.C. § 918" does not exist, the Court considers the remaining code section cited by Plaintiff, § 81, which provides:

> Whoever, within the special maritime and territorial jurisdiction of the United States, willfully and maliciously sets fire to or burns any building, structure or vessel, any machinery or building materials or supplies, military or naval stores, munitions of war, or any structural aids or appliances for navigation or shipping, or attempts or conspires to do such an act, shall be imprisoned for

---

purchase equipment for the restaurant. (Doc. 1 at 4). Plaintiffs allege, however, that Defendant Kelly "became the conspiracy leader in regards to threats and communications with Plaintiffs during the following months." (Id.). Plaintiffs further allege that: "[a] next door neighbor has given a statement that she heard Defendant Lunceford's truck leave his driveway at 3:00 a.m. the morning of the fire. It is impossible to believe th[at] Defendant Kelly was not aware of what Lunceford's evil intentions were that early morning. She must be held equally accountable." (Doc. 1 at 25). These conclusory and speculative allegations about Kelly's involvement with the lease and Plaintiffs' "belie[f]" that Kelly must have been involved in the arson committed by Lunceford are insufficient to establish her participation in the operation or management of any racketeering "enterprise."

[9] As noted above, Plaintiffs' speculation that Defendant Kelly must have been involved in Defendant Lunceford's plan to commit arson and, by extension, attempted murder (Doc. 1 at 25), is insufficient to state a claim for relief against Defendant Kelly under any theory of liability.

13

> not more than 25 years, fined the greater of the fine under this title or the cost of repairing or replacing any property that is damaged or destroyed, or both.
>
> If the building be a dwelling or if the life of any person be placed in jeopardy, he shall be fined under this title or imprisoned for any term of years or for life, or both.

18 U.S.C. § 81. A review of the complaint in this action indicates that Plaintiffs' allegations do not state a claim under § 81.

1. No Private Right of Action.

Although RICO provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962," see 18 U.S.C. § 1964(c), "[a]s a general matter, 'Title 18 is a federal criminal statute which does not create civil liability or a private right of action.'" Shipp v. Donaher, 2010 WL 1257972, *11 (E.D. Pa. 2010). "Thus, private parties may not maintain suit under most provisions of Title 18." Id. "'The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private right of action.'" Williams v. Cerny, 2010 WL 4967773, *1-2 (E.D. Cal. 2010) (quoting Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979)). "Instead, the statute must either explicitly create a right of action or implicitly contain one." Id. (citations omitted).

It appears that no federal court has addressed the question of whether 18 U.S.C. § 81, which criminalizes arson committed "within the special maritime and territorial jurisdiction of the United States," contains a private right of action. In any event, there is no such right in the language of this criminal statute. Therefore, Plaintiffs have no basis upon which to maintain a private cause of action for its violation. Cf., Cohen v. Carmel, 2010 WL 2991558, *1 (S.D. Fla. 2010) ("The Plaintiff's claims arising out of 18 U.S.C. §§ 241 and 242 must be dismissed because there is no private cause of acti[on] arising from these criminal statutes."); Davis v. Shinseki, 2011

14

WL 382364, *7 n.10 (M.D. Ala. 2011) ("'[A]s criminal statutes, [18 U.S.C. §§ 1621, 1512] do not convey a private right of action' nor do they authorize an individual to initiate criminal proceedings."). Accordingly, Plaintiffs' claim for relief under 18 U.S.C. § 81, as set forth in Count Three, fails to state a claim upon which relief may be granted.

2. Alleged Criminal Violation Did Not Occur in "Special Maritime and Territorial Jurisdiction of the United States."

In addition to the foregoing, Plaintiffs' claim under 18 U.S.C. § 81 fails because the alleged violation did not occur in the "special maritime and territorial jurisdiction of the United States." Section 81 is one of a group of statutes referred to as "federal enclave"[10] laws which "permit[] the federal courts to serve as a forum for the prosecution of certain crimes when they occur within the '[s]pecial maritime and territorial jurisdiction of the United States,' 18 U.S.C. § 7; this jurisdiction includes federal land, and property such as federal courthouses and military bases." U.S. v. One Big Six Wheel, 987 F. Supp. 169, 174 n.8 (E.D.N.Y. 1997) (citations omitted). "Among the crimes defined by the federal enclave laws are murder (18 U.S.C. § 1111), manslaughter (18 U.S.C. § 1112), arson (18 U.S.C. § 81), assault (18 U.S.C. § 113), kidnaping (18 U.S.C. § 1201(a)(2)), maiming (18 U.S.C. § 114), and receiving stolen property (18 U.S.C. § 662)." Id.

In the present case, Plaintiffs' allegations show that the alleged violation of § 81-- arson-- occurred on private property in Gulf Shores, Alabama, not on a federal enclave. Therefore, Plaintiffs' allegations, as set forth in Count Three, fail to state a claim under 18 U.S.C. § 81 for this reason as well.

---

10 "A federal enclave is a tract of land over which the United States government exerts exclusive federal legislative jurisdiction." Overseas Military Sales Corp. v. Suarez-Melendez, 2009 WL 793612, *3 (D. Puerto Rico 2009) (citations omitted).

15

IV. Conclusion.

Accordingly, for each of the reasons set forth above, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted. Based on the foregoing, it is further recommended that Plaintiffs' pending "Motion for Directed Verdict Judgment" (Doc. 34) be denied.

**If Plaintiffs wish to file an amended complaint to correct the deficiencies described above, they must submit an amended complaint with any objections that they file to this report and recommendation**. **The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.**

DONE this 18th day of August, 2011.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

l. ***Objection***. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. ALA. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[11] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. ***Transcript (applicable Where Proceedings Tape Recorded).*** Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[11] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" FED. R. CIV. P. 72(b)(2).